**ORION COMMUNICATIONS LIMITED, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

Liberty Productions, A Limited
Partnership, et al.,
Intervenors.

Nos. 98–1424, 98–1434, 98–1444, 98–1445,
98–1523, 99–1188, 99–1212, 99–1249,
99–1260 and 99–1423.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 19, 2000.

Decided June 13, 2000.

Stephen C. Leckar argued the cause for petitioner Orion Communications Limited, et al. With him on the briefs were Richard F. Swift, Donald J. Evans, Gene A. Bechtel, Stephen T. Yelverton and Loren A. Colby.

James K. Edmundson argued the cause and filed the briefs for petitioners Dewey Matthew Runnels and Howard G. Bill.

Dennis P. Corbett argued the cause for petitioner Davis Television Duluth, LLC., et al. and Intervenors Riverbank Restaurants, Inc., et al. With him on the briefs were Loren A. Colby and Timothy K. Brady.

Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission, argued the cause for appellees. With him on the brief were Christopher J. Wright, General Counsel, C. Grey Pash, Jr., Attorney, Joel I. Klein, Assistant Attorney General, United States Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys.

Stephen T. Yelverton, Timothy K. Brady, Donald J. Evans, Thomas A. Hart, Jr. and Scott C. Cinnamon were on the brief for intervenors.

Before: GINSBURG, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

In the Balanced Budget Act of 1997, Congress amended section 309(j) of the Communications Act of 1934 to require competitive bidding for commercial broadcast services, replacing the Commission's historic practice of awarding such licenses through comparative hearings. *See* Balanced Budget Act of 1997 § 3002(a)(1), Pub.L. No. 105–33, 111 Stat. 251, codified at 47 U.S.C. § 309(j). Following a notice of proposed rulemaking, the FCC issued two orders implementing section 309(j). *First Report and Order,* 13 F.C.C.R. 15920 (1998); *Memorandum Opinion and Order,* 14 F.C.C.R. 8724 (1999). Various parties filed petitions for review of these orders. In this opinion, we consider the petition for review in No. 99–1188. We resolved all of the issues raised by the other petitions in a separate order issued herewith.

In the *First Report and Order,* the FCC determined that applicants for broadcast

service auctions would be subject to its anti-collusion rule, 47 C.F.R. § 1.2105(c)(1), which it had previously applied in sixteen spectrum auctions. *First Report and Order,* 13 F.C.C.R. at 15980–81 ¶ 155. This rule provides that, following the filing of short-form applications,

> applicants are prohibited from cooperating, collaborating, discussing or disclosing in any manner the substance of their bids or bidding strategies, or discussing or negotiating settlement agreements, with other applicants until after the high bidder makes the required down payment, unless such applicants are members of a bidding consortium or other joint bidding arrangement identified on the bidder's short-form application. . . .

47 C.F.R. § 1.2105(c)(1). In other words, applicants may not negotiate settlement agreements after their short-form applications have been filed.

Petitioners contest the FCC's application of its anti-collusion rule, urging instead that the Commission permit applicants to negotiate settlement agreements within a reasonable interval—they suggest ninety days—of the date of filing. They first contend that the anti-collusion rule violates section 309(j)(6)(E), which provides:

> Nothing in this subsection, or in the use of competitive bidding, shall be construed to relieve the Commission of the obligation in the public interest to continue to use engineering solutions, negotiation, threshold qualifications, service regulations, and *other means* in order to avoid mutual exclusivity in application and licensing proceedings.

47 U.S.C. § 309(j)(6)(E) (emphasis added). Making a *Chevron* step one argument, petitioners claim that "Congress both intended and expressly provided that the Commission is obliged in the public interest to use settlements (*i.e.,* 'other means') to avoid mutual exclusivity in broadcast auction proceedings."

The question we ask at *Chevron* step one is whether Congress has "directly spoken to the precise question at issue."

*Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We cannot see how section 309(j)(6)(E) speaks to the precise question of whether the FCC must permit a reasonable interval for settlement negotiations when the statute does not even mention settlements, let alone a specific time interval for negotiations. To be sure, settlements are "other means" of avoiding mutual exclusivity, but the statute cannot be read to direct the FCC to adopt *all* other means available.

Petitioners next claim that the Commission's application of the anti-collusion rule is arbitrary and capricious, arguing that "the Commission never explains why, in its view, the provision for a reasonable interval for settlement is irreconcilable with its policy to deter collusion." We disagree. The Commission more than adequately explained its reasons for applying the anti-collusion rule. "Permitting competing applicants for new facilities in all broadcast services to engage in discussions concerning settlements or other resolution of their mutual exclusivities following submission of their shortform applications," the Commission said, "would, we believe, reduce the effectiveness of the anti-collusion rule." *Memorandum Opinion and Order,* 14 F.C.C.R. at 8755 ¶ 61. The Commission elaborated:

> For example, if competing broadcast auction applicants were permitted to engage in discussions concerning settlement or other resolution of mutual exclusivities, these competing applicants would almost inevitably transfer information at least indirectly affecting bids or bidding strategies, thereby adversely impacting the competitiveness of the auction. Moreover, given our statutory obligation to utilize auctions as a primary licensing tool, the protection of the integrity of the auction process is of paramount importance, and we are consequently concerned about actions that compromise the integrity of the process, particularly behavior that violates the anticollusion rule. The Commission's

experience in conducting numerous previous auctions has demonstrated the importance of the anti-collusion rule in preventing and facilitating the detection of collusive conduct.

*Id.* (internal quotation marks omitted). Finding this explanation entirely reasonable, we deny the petition for review.

*So ordered.*